We move to the fifth case this morning, United States v. Dridi. May it please the court. This court should reverse and remand the district court's restitution and sentence issued against Mr. Dridi. To calculate restitution and the lost amount underlying Mr. Dridi's sentence, the district court was required to make several findings, one of which was to determine the scope of the conspiratorial agreement Mr. Dridi agreed to in this case. The district court failed to make those findings and instead adopted a one-size-fits-all sentencing approach, sentencing Mr. Dridi based on all of the losses caused by the elite conspiracy. This court's precedent and the United States sentencing guidelines require that such findings be made, and the lack of such findings constitutes plain error in this case, plain error that impacted Mr. Dridi's substantial rights, because in this case insufficient evidence exists to support the district court's ultimate restitution and lost amount calculations. Plain error to overcome waiver, I presume. Yes, there is no waiver here, Your Honor. The government has pointed to one proposed strategic reason that Mr. Dridi perhaps forwent the opportunity to object to both restitution and the lost amount calculations, saying that Mr. Dridi merely threw himself at the mercy of the district court. However, the evidence does not support such a strategic reason. In fact, Mr. Dridi objected to two other enhancements in front of the district court. Moreover, for waiver to occur it must be knowing and intentional, and in this case Mr. Dridi simply didn't know that relevant conduct findings were needed. In fact, the district court, probation office, and the government itself didn't know such findings were necessary. The district court and the probation office didn't even mention the term relevant conduct or mention the relevant provision of the guidelines, section 1B1.3. All of that suggests that Mr. Dridi did not know he should have objected to the lack of relevant conduct findings. Further, this court views waiver principles in favor of the defendant, and in this case Mr. Dridi should not have, or this court should not hold that Mr. Dridi waived the right to object. Let's say that we agree with you and plain error review applies. Would you say here that this is the way to conceive of your argument? You talk a lot about the procedural error that the court didn't make the findings, and yes, I agree the court was obligated to make the findings, but it seems to me that really what you're, the gravamen of your argument really is that this should not have been relevant conduct attributed to him, this full loss amount, and that his counsel should have raised that argument. I mean, that was the error, right, that the counsel, this seems to me like James James. I mean, this was 16 levels, right, of his guidelines calculation, and if we say that what you're saying is that it was plain error to attribute the full loss to him because, in your view, much of this plainly fell outside of his involvement in the conspiracy, then we have to look at the court's factual findings to see whether they were plainly erroneous, but there are no findings for us to review because the district court didn't make them. Is that a way to kind of conceive of how you're? I think that's fair, Your Honor. Yes, I mean, we would contend, and based on what you just said, I believe your question is assuming that you would not find waiver. The lack of findings would be the procedural error, the plain error, and then we would have, or this court would have to analyze whether there's a reasonable probability that on remand the result would be different, and thus it would need to analyze the factual record to determine whether the loss amount, the full loss amount, could be attributed to Mr. Grady. Does that answer your question? Well, it does. It's just the way that you framed it is odd, focusing exclusively on the procedural error because in most of the cases that talk about the judge's obligation at sentencing to make those factual findings, the challenge as a matter of first order principle has been that the guidelines should not have applied for some reason. It hasn't been, outside of the 3553 context, talking about guidelines, it hasn't been just straight on to the procedural error, right? Because the lack of findings matters only because you say that, plainly, this should not have been attributed to him, right? Yes, that's true. And I guess, you know, describing exactly what the error here is, I think we would say that the error was the lack of findings and it was erroneous for the district court to hold Mr. Grady, or sentence Mr. Grady based on the entirety of the losses here. Right, and I think it, but one good argument you have going for you on waiver versus forfeiture is that, as in James James, it seems like this was maybe deficient performance by counsel. You know, James James says that if performance by counsel leaves the court with the conclusion that it would have been deficient, then that cuts in favor of it being forfeiture rather than waiver. And here, to not raise any kind of objection or probe at all, the basis for the loss amount, which accounted for such a big chunk of the guidelines calculation, seems like counsel should have objected, right? He should have objected, that's true, but he didn't. And I, and nobody noticed the problem, one, but I think secondly, this court's cases, Anderson, Allen, which Judge Caney himself authored, and Jackson say that the defense counsel's mere statement that he doesn't object when asked, do you object to the offense level calculation or the 16 level increase or the restitution calculation doesn't constitute waiver standing alone. And based on all of the other facts here, there's just not enough for waiver to have occurred and plain error review should apply. Turning back to the merits, at minimum, remand should occur here for purposes of restitution. The government admits at page 39 of its brief that there are amounts in the restitution award here that are not supported by sufficient evidence. Specifically, the government admits that roughly $60,000 in losses predated Mr. Driede's involvement in the conspiracy, even viewing the facts in the manner the government views them. If this court reverses on restitution and thus gives the district court the opportunity to make those, not relevant conduct findings, but very similar findings for purposes of restitution, then it should also remand for purposes of loss to give the district court an opportunity to make the relevant conduct findings and determine an amount of loss that is supported by the evidence. In this case, the district court didn't make relevant conduct findings, neither did the PSR, and Mr. Driede's primary complaint is that the district court and PSR didn't make a finding as to scope. Specifically, it didn't make a finding as to when Mr. Driede joined the conspiracy. The PSR itself acknowledges that Mr. Driede didn't start at Elite until late 2013, and it's probable the district court would have concluded, if it had made relevant conduct findings, that Mr. Driede didn't join the conspiracy until late 2014. I see I've only got three minutes left. I'd like to reserve the remainder for rebuttal. Thank you. Your Honor, may it please the court, Bob Wood on behalf of the government, I'd like to start with the idea, the deficient performance idea that Your Honor raised. It's not the magnitude of 16 levels that would be at issue, it's two levels, because that's all that his, even if he is right about a couple of things that he can't, I think, be right about, the most that he says could change is two levels. Well, I'm not saying that there's a possibility that all 16 would go away, I'm just saying that when that accounted for the bulk of the sentence for counsel not to focus on that issue. Sure. It's surprising. And the strategic reason for waiver is one of two reasons that there's waiver. In Burns and Sumner, this court said, if you object to some aspects, some enhancements, and not others, the ones you left out are waived. That's exactly what happened here. Separately, apology was absolutely his strategy. He brought flowers for the prosecutors at the sentencing. All he talked about was apologizing for that. He was absolutely right to object to the role enhancement. That was a big enhancement. It took the court less than a minute to resolve it. It didn't really interfere with his contrite strategy. But he had already seen, everyone in the case had already seen that the loss calculation issue could be protracted. It took a hearing, followed by briefing. Earlier in the case, other defendants noticed this and objected to it. He had, his counsel is a good, well-regarded counsel who surely knew about this, but the context supplies all the knowledge that is necessary for this, and he chose not to object to loss. I think it makes a lot of sense, and before I get to a couple of other things, I'd like to clarify that the government doesn't concede the fact that he is not responsible for all of this. We have conceded for the sake of argument, not conceded, we're giving him for the sake of argument the room that he asks to breathe with the $60,000, the $80,000, and it's just not enough to get him where he needs to be. Even if you take the roughly $400,000 that Mr. Greedy identifies in his reply brief, the loss amount in the PSR was $2 million. Subtract $400,000, that's all he's accounted for, you get to $1.6 million, and it's the same, that's still 16 levels. It's still above $1.5 million. There is some issue, and I'll be the first to agree that relevant conduct findings always help, they should be undertaken, it can't be a plain error to have not undertaken them when the most recent case on point says that it's necessary only when it's put in issue. I mean, it says that in the sentence, but that wasn't really the focus of the case, right? It was not the focus of the case. All the cases that Mr. Greedy cites for the mandatory nature of making such findings are either post-Booker cases where the issue was raised, so it is, of course, required if the issue is raised consistent with White, or pre-Booker cases. So, you know, procedural requirements are extraordinarily important at the district court, but that is— The issue was raised in all those cases, the Burns line that he cites? So in White, the two cases that—so the issue was raised in White, first of all. Well, right. And then there were two cases cited in White, and I believe, I think I can confidently say that at least one of them, the issue was raised. I can supplement, because, you know, I think that's correct. I'm just saying that, you know, he cites Burns, and Dean, and Fox, and Thompson, and it was not raised in all of those. Those— Some of them— Sorry, I meant—Your Honor, I apologize. I meant the two cases cited in the reply brief that White relied on, and then the pre-Booker cases, it was a plain error in the D.C. Circuit's case, and so it wasn't raised in that case, but I think in at least one of the other pre-Booker cases, and that's why I separated it out. There are some pre-Booker cases where it was plain error. There are some post-Booker cases. Burns is different, and to a big degree, on the terms of Burns, this is a waiver case, and if you look at the facts, they're just not the same, and it was difficult. The Court said it was a very close call. Even probably the best case for this that's cited in his brief for this not being a waiver case is the Tenth Circuit's Figueroa elaborate—I can't remember exactly how to say it—case, but even in that case, they entertained the idea that waiver would apply in this context, looked at the facts on this exact question, said perhaps waiver could apply here. It's not mandatory in that sense, and said, you know, on the facts here, it's just not waiver. The government's argument to distinguish Figueroa is both that it's out of circuit, but also inconsistent with at least that line in White, and I get if Your Honor would like to treat that as dicta, that's perfectly understandable, but the facts here are also different. There is a lot of context here informing the waiver question, but there are also other questions beyond the waiver question. But doesn't the district court have an obligation to make findings? The district court—yes, and there are all sorts of procedural obligations that a district court undertakes where this court has said that's not plain error. Right, and so this kind of goes back to the framing issue, right? He's framing it not as it was a plain error to attribute this relevant conduct to him, but that it was a plain error not to object to the lack of findings, and you're framing it as it was a plain error about whether he forfeited or waived his objection to the relevant conduct that was attributed to him, right? So you're identifying slightly different errors. Right, I think what at least our reply brief was trying to— or our response brief was trying to do was to say he's identified a kind of combined error, and we're going to treat this as there's the procedural error not to make any relevant conduct findings at all, and there's the error— so you have to view it kind of two ways. There's the error in the findings themselves or the dovetailing nature of those findings as it relates to the plain error on the procedural question as to whether or not he can establish a reasonable probability within the plain error framework. So I'm not exactly sure how it's been teed up. We tried to respond to it in every which way, including by saying that if you look at the facts, it's waived, but if you look at the claims, really the limitation of our plain error argument on just the relevant conduct. My question is if this court has spoken in a recent published opinion and indicated that those findings are necessary only when the issue is contested and the rest of the law on the issue is kind of mixed, because most of the time it's not a plain error review issue where the words imperative and required are used, then it's hard for the error to be plain. But at the same time, because I've been hearing plain error cases before you have the arguments you have, we thought that to give plain error some meaning because the underdeveloped nature of the record is on the way plain error views that is that responsibility is borne by the defendant, not by the district court. So we supplemented the record without any objection or litigation over the issue just to give the court some comfort that there's nothing to see here. So almost all the losses that were put into evidence were very late in the scheme. Our framing of his time, again, trials don't go into time, they go into guilt or innocence. Sentencing issues can go into time frames, at least trials of this nature. I chose mid-2014 to be conservative. It seems likely to me if this court, notwithstanding Mr. Greedy's decision not to object, sends it back for a full hearing with evidence on when he joined everything because of the fact that he joined in early 2013, he was a confidant of the bosses on the fraud schemes, he knew all sorts of things going on. The first date that he identifies in October 2014, he was, as a matter of routine, saying, it's very likely that the full $2 million, he would be on the hook for all of it if we were to re-tailor all the evidence by dates. Because I understand that saying that the district court's failure to make any relevant conduct findings with nothing in the PSR is not a plain error, is not the strongest argument in the world, I just wanted to give the court sufficient facts to give the court comfort that this was not a case where his sentence is likely to be affected at all if there's a remand. And that's not because of 3553A, that's because of what the loss amount is almost certainly going to be. It's the loss amount everyone else has had in the it's essentially the same. These things, as one of my footnotes indicated, these things always change in fraud cases over time. If you're the last sentence, the last defendant's sentence, you always have the highest amount. It's little tweaks, but he's likely to have the exact same result on remand. But in respect for the district court, I think affirming across the board is the right thing to do. Thank you. Thank you, Counsel. Thank you, Your Honors. First of all, I'd like to say that the loss amount here is not $2 million as the government represented here a moment ago. The loss amount is listed in paragraph 33 of the PSR and is $1.848 million. Mr. Driede's restitution amount was $1.811 million. The $2 million amount was an amount that went to other co-conspirators, including Isaac Kiyali and a few other conspirators. The $1.8 million amount was imposed on Mr. Driede and imposed on the ringleader of the elite conspiracy and imposed, I believe, on the second-in-command, Mahdi Khalifi, who went to trial with Mr. Driede. So the $2 million amount is not in play here. So $4 million, as we point to in our reply brief, reduction in $4 million would put him below $1.5 million and thus give him a lower sentencing guidelines range. Who were the biggest losers? Some lender. Somebody is getting away with it. I mean, they loan money on these cars and frankly, we lost. I don't understand how this whole scheme worked. But it seemed to me that borrowed money was not being repaid. That's ultimately what blew the whistle here. Oh, I think that's right. Borrowed money was not being repaid. But it's not clear when Mr. Driede started participating in that scheme. The earliest evidence in the record is from October 2014. That evidence appears at transcript page 408 to 429 and includes emails to Mr. Driede basically asking him to doctor evidence to be submitted to lenders. But that's really the first evidence the government introduced at trial regarding Mr. Driede's involvement in the lender fraud, which makes a substantial portion of the loss here. Before I run out of time, I'd also like to say this court has found waiver in similar circumstances, or excuse me, has found forfeiture in similar circumstances. Two cases come to mind primarily. First of all, Sumner. In Sumner, the defendant failed to object to the lack of relevant conduct findings slash the lost amount calculation. And this court said that a forfeiture had occurred and actually found a plain error that impacted substantial rights. In Jackson, a similar occurrence took place. However, this court said that although there was a plain error, it didn't impact substantial rights. So the idea that this court should even if Mr. Driede failed to object, should find waiver is not supported by past cases in this circuit. Finally, the government has said that it's very likely on remand that given the record, Mr. Driede would receive the same sentence. Based on the evidence and based on the record, that's just not true. It's the government's burden to prove by a preponderance of the evidence, the loss amount, and the restitution amount. And there's just not much here about timing, about when Mr. Driede agreed to participate, and about what he actually did. And for that reason, this court should reverse and remand because the lack of findings was a plain error that impacted Mr. Driede's substantial rights. Thank you. Thank you, counsel. Counsel, your point in this case and the court appreciates your taking the case and their fine representation. Thank you. The case is taken under advisement.